We will hear argument next in Case 16-1495, the City of Hays v. Vogt. Mr. Hytens? Mr. Chief Justice, and may it please the Court, the decision below should be reversed for two independent reasons. Reason number one, because the only setting in which a person can be made to be a witness against himself for purposes of the Fifth Amendment is during a proceeding where that person's guilt or punishment are to be adjudicated, that is, at trial. And second, because regardless of whether it is possible that some types of Fifth Amendment violations could ever occur before trial, the Court should reject any such notion with regard to the specific type of Fifth Amendment violation alleged here, which is the use of statements in violation of Garrity v. New Jersey. Kennedy, your first statement was very well stated, but would you say the first reason is because the only thing that double jeopardy, that the clause applies to is? That the self-incrimination clause can only be violated during a proceeding where the person whose statements are at issue is being used to adjudicate that person's guilt or punishment for purposes of criminal liability. That's the first reason. It has to be at trial. So in making that argument, Mr. Huytens, you are recognizing that you are shrinking to almost a vanishing point the possibility of using the Fifth Amendment to block the use against you of incriminating and shrinking the privilege to nothing because there aren't many trials nowadays, upwards of 95 percent of cases are disposed of by plea bargaining. So by limiting the Fifth Amendment to there must be a trial, there must be a witness at trial, you are saying effectively the Fifth Amendment, which is considered very important, is out of the picture in most criminal cases. I don't think that's right, Justice Ginsburg. And I think the reason for that is that it's critical to distinguish between two issues. The first issue is when can the privilege against self-incrimination be invoked. And the second is when the self-incrimination clause can actually be violated. So let me give you an example. Under this Court's decision in Chavez, if Chavez holds nothing else, I understand Chavez to hold this, nothing that happens inside a police interrogation room can itself constitute a completed violation of the Fifth Amendment. But that is not to say, of course, that if an officer is interrogating me, I cannot say I decline to answer your questions on the grounds that may incriminate me. So I think it's very important to distinguish between the question of when the privilege can be asserted. I can assert the privilege in a civil case. I can assert the privilege in a police interrogation room. I can assert the privilege at someone else's criminal trial. And nothing that we're asking the Court to do is inconsistent with any of that. Ginsburg. So, Mr. Heitkamp, if this defendant, based on what you just said, could refuse to answer the question if it had been put to him at the probable cause hearing. So tell us about that episode when you retained the knife. He could say, I won't, because that might incriminate me. He could raise the privilege. Absolutely. But he can object if prior testimony, a prior statement to that effect, is introduced at the probable cause hearing. He said it before, it can't be introduced. If he gives a testimony, if he gives a statement at the probable cause hearing, that's right, he doesn't have to incriminate himself. But he can't object to the introduction of a prior compelled statement. I understand the apparent anomaly, Justice Ginsburg. And I think the reason, though, for it is, the reason that he can assert the privilege against self-incrimination at the probable cause hearing is the same reason that he could assert it in the police interrogation room. It is the risk that if he gives a statement in that setting, it could later be used against him at a trial on guilt or a trial on the merits. And that's the reason that he could assert the privilege at the probable cause hearing. But it is not because that anything that happens at the probable cause hearing can actually make him a witness against himself. Breyer, what about a grand jury proceeding? Can it be asserted? Absolutely, Justice Breyer.  Can it be prevented? Justice Breyer, our understanding the can what? Breyer, I mean, I've come across Supreme Court cases which refer to a grand jury proceeding as part of a criminal case. And you cannot introduce it in a criminal case. So what I wondered and seem to be missing is I haven't found anything that says, you know, you can't attack the grand jury proceeding later, but that's different. So somebody finds a way, he gets an order from a judge, he says, I don't want these pieces of paper introduced. They were taken from me in violation of my Fifth Amendment right not to be a witness, and I don't want them brought before the grand jury. I'm rather surprised that that's never come up. Well, Justice Breyer, I think it has come up, and I think that point is Then where are the cases that say that even though the person objected, you can introduce it to the grand jury? I can't find any. And I have found cases that say a grand jury is a criminal proceeding. Right. We certainly understand the grant this Court's decision in Councilman to say that the grand jury is part of the criminal case for purposes of the Fifth Amendment. And we think that's very significant because, Justice Breyer, I agree that I'm not aware of any case where the defendant tries to stop the information from being presented to the grand jury. What I am aware of is numerous statements by this Court that says that a defendant may not attack an indictment by claiming that the grand jury considered statements obtained in violation of the Fifth Amendment. By my count, the Court has said that at least three times. Mr. Heidens, you also agree now, don't you, that the probable cause hearing is part of the criminal case? That's not at issue here. We agree with that, yes. Okay. So then if I just look at the language of the self-incrimination clause, it shall be compelled in any criminal case which we are in now, and there's no issue here about compulsion. Maybe there should be, but there isn't. It shall be compelled in any criminal case to be a witness against himself, to be a witness against himself. If I'm just thinking about the natural reading of those terms, it's when my testimony is introduced, adverse to my interests in that criminal case. So why isn't that just what we should be asking? I understand that if you were looking simply at the language, that is a more than plausible interpretation, but I don't think that's the case. Kind of the obvious interpretation, right? But I think it would be inconsistent with a number of things that this Court has already said, and I think it would be inconsistent with some of the concessions that I understand our friend on the other side to have made. Let me give you one very, very clear example. I think a Gerstein hearing is also pretty clearly part of a criminal case, and I understand the red brief to all but acknowledge that the rule that they're advocating doesn't apply to Gerstein hearing. This Court in Estelle, I think a competency hearing is clearly part of a criminal case, but this Court said in Estelle that the court in Estelle said was that this is actually a neutral determination.  Kagan, when you're declared incompetent, is to continue to be detained as incompetent. So it's not like here, where it's like, well, obviously, obviously I want to win this so that I can get out of this criminal case. Sure. Well, I guess two responses to that, Justice Kagan. I think everything you just said also would apply to a grand jury context, and the Court has repeatedly said you can't attack an indictment. Yes. I mean, you're quite right that there's a – if you're right that the grand jury is different, and you might be, that there is a kind of anomaly there, but explained, I think, by a kind of historic judgment that grand juries are sacrosanct, that everything has to be secret, that we don't want people poking around in that black box, and none of that is true of just standard probable cause hearings. We agree with that, Justice Kagan, but I think the anomaly actually goes deeper than that for two reasons. One is that under Kansas law, under Kansas law, this probable cause hearing is an express statutory substitute for proceeding by grand jury. And so we think it would be a little bit strange to say that you have rights at the substitute proceeding that you only have by virtue of State law. Sotomayor, I'm sorry. How is it the same? It's not the same. In a grand jury, there is no adversarial pursuit. There is no judge. There is no defendant's lawyer. There is no anything like the grand jury. So it can't be – it's an imperfect substitute at best. Well, I agree that the procedures aren't the same. Certainly, Justice Sotomayor, I understand the procedures are different. I'm not sure what any of that, though, has to do with whether this is a criminal case and whether I'm being made to be a witness against myself for purposes of the Self-Incrimination Clause, but I think there's an even bigger problem, which is the anomaly is actually not a two-part anomaly, it's a three-part anomaly. Because as I read this Court's decisions in Hurtado and Gerstein, the State of Kansas could choose option number three, option number three being no grand jury, no probable cause hearing. The prosecution goes forward based on nothing but the prosecutor's determination that there is probable cause, and there is no suggestion that it would violate the Self-Incrimination Clause for the prosecutor sitting in her office to consider these statements. So we're in a situation here where as far as the Federal Constitution is concerned, Kansas has three choices, a grand jury, a probable cause hearing, or neither. And it appears clear to me that in option one and option three, the right that our friends on the other side are asserting would not apply. And so it would seem anomalous that you have rights in option two that you don't have in option one or option three. But even if the grand jury analogy isn't persuasive to all members of the Court, I think there's another analogy that is extremely damaging, which is the Gerstein analogy. Because as I read this Court's decision in Gerstein, the legal question that is decided at a Gerstein hearing, whether there is probable cause to believe that the accused has committed the crime, is legally indistinguishable from the question at Kansas' probable cause hearing. So I'm not sure what the basis on that ground would be for saying that this right applies at the probable cause hearing, but doesn't apply at the Gerstein hearing. And I don't think it's plausible to say that it applies at the Gerstein hearing for all the reasons that the Kansas amicus brief gives, because it's simply not going to be practically possible to have this right at a Gerstein hearing, which is a non-adversarial proceeding where there is no right to counsel and which has to be held within 48 hours of arrest and detention. Breyer. So back to my first question, I don't know what the answer is in a grand jury proceeding. I do know you can't attack that proceeding at trial, but I don't know whether, as in this case, somebody might, if they were used, bring a 1983 claim on the ground that its constitutional rights have been violated. That's what happened here. And I don't know what would happen if, because of the circumstance, the defendant went before a judge and said, Judge, keep that piece of paper out of the grand jury proceeding. So I do think perhaps they should be treated alike, but I don't know what alike is. Well, Justice Breyer, I think all the reasons that the Court has said that you can't collaterally attack an indictment would also argue in saying that you can't file a 1983 action. Why? I don't know. Maybe you could. I mean, there are — I don't even know where to go to look that up. Sure. And I assume you've looked it up. I have, Justice Breyer. And the reasons this Court gave in its most recent decision on the collateral attack on the grand jury, the Court said, well, if you had a right to challenge the evidence that was introduced before you, before against you at a grand jury, you'd have a right to discovery, you'd have a right to try to find out what was happening before the grand jury. Who would? So we have an instance where there is a committee investigating Mr. Smith, and Mr. Smith takes the Fifth Amendment 94 times, and then they compel him to give all kinds of statements, and then there's a grand jury, and he goes to the judge and says, Judge, keep those statements out. I understand why Mr. Smith might want to do that. I understand that. He says they were taken in violation of my Fifth Amendment right, and there we are. Keep them out. Keep them out of the grand jury. Huh. And you're telling me there is — so this is an important case in more ways than one, because what we decide here, I guess, would decide the same thing for the grand jury. Well, Justice Breyer, I'd say two things on that. First and foremost, if he believed that his statements were used in that way, I think it's useful to take a step back and realize nothing that we are saying is to suggest that Mr. Smith, in Justice Breyer's example, would not be entitled to file a motion to suppress each and every one of those statements at his criminal trial, and if that motion prevailed, he would very likely get a dismissal on the charges, because if it was actually true that the government's evidence was almost all derived from his own compelled statements, the granting of the motion to suppress before trial would effectively end the criminal proceeding in his favor. So it's not as if we're — and the same thing is true here. If Officer Vogt was correct that the statements that were used were obtained and then used in violation of — were obtained in violation of Garrity, and if this case had gotten past the probable cause hearing, I assume and expect that Officer Vogt's lawyer would have filed a motion to suppress all of those statements at trial, and if his Garrity claim was meritorious, I think we need to assume that that motion would have been granted, and if that motion is granted, and if all of the evidence was in fact, or much of the evidence, was derived from those statements, I assume that the criminal proceeding would have ended in his favor. So we're not putting defendants in a position where they don't have an opportunity justice— Sotomayor, can we step back a second? Your briefs notes that the Respondent did not file a motion to suppress his statements or object at the probable cause hearing to their admission. Isn't that a waiver? Just — I want to be careful, Justice Sotomayor, about what is and is not in the record. I do not read Mr. Vogt's complaint to allege that he ever filed such an objection. That's what I can say based on the paper. You've seen the record. And based on my review of the transcript, I do not — it's not in the record, but I understand, my understanding from the hearing is that he did not file such a motion. And wouldn't a ruling by us against you just mean that defendants, whether it's within 48 hours that a hearing is being held or a probable cause hearing, et cetera, wouldn't we be putting the onus on defendants to raise a valid objection if they have one then? Justice Sotomayor, I would certainly say if the Court were to rule against us, I would urge that you make clear that any such right requires a timely objection. Well, that's a matter of law. If you don't object to the admission of a statement, you've waived that objection. That's certainly generally true, Justice Sotomayor. Are you familiar with any cases, I don't know what the States say about this, but in Federal law that allow a person who thinks that he or she may be under investigation by a grand jury to go to a Federal judge and file a motion in limine regarding the evidence that may be presented to the grand jury? I am not, Justice Alito. This would be revolutionary, wouldn't it? I would agree with that, Justice Alito. If there are no further questions, I'd like to reserve. Thank you, counsel. Ms. Prelogar. Mr. Chief Justice, and may it please the Court. The self-incrimination clause prohibits using a defendant's compelled statement to adjudicate his criminal responsibility. That kind of prohibited incriminatory use does not occur in a pretrial probable cause hearing, where the defendant's guilt and punishment are not on the line, and the only question is whether he'll be bound over to the next stage of the criminal case. I'd like to begin. Ms. Prelogar, I guess that would mean as a conceptual matter, even if not as a practical matter, but as a conceptual matter, that the government could force somebody to testify against himself in such a proceeding. Well, to be clear, Justice Kagan, we think that a defendant in that situation would still have a valid privilege against self-incrimination, because he could reasonably fear that anything he says in that probable cause hearing could then be used against him at the ensuing trial to prove his guilt. So a defendant could invoke his privilege to prevent that testimony, and at that point, the only way the government could compel the defendant to speak would be to formally grant him immunity. Yes. So this is why I said maybe not as a practical matter, but as a conceptual matter, you would be saying that the government could, if it chose and if it accepted certain consequences, could force him to testify against himself. Only by granting that immunity. Right. And if this Court is recognizing the immunity cases, by then conveying on the defendant and conferring on him that right. How about this? How about if he didn't testify, could the government draw an inference against him for failing to testify, as the government could, for example, in a civil case? I think that the government could draw the adverse inference, but I think the inference would only matter if the government had already come forward with sufficient evidence to show that you would expect the defendant to respond to that and to speak at that hearing. And at that point, I think the government has already proven probable cause. So I can't imagine any case where it would make a difference to draw an adverse inference against a defendant in that situation. Yeah. I guess my questions are just that it seems odd for something that is understood to be a part of the criminal case. I don't – I take it that you have no continuing objection to that view either. That's right. We think this is part of the criminal case. So, you know, it just seems odd for something that is clearly part of a criminal case to say, yes, the government can draw an adverse inference, but don't worry, we won't, it will never come up. And yes, the government could force him to testify against himself, but don't worry, we would have to give him immunity and we wouldn't want to do that. It just seems conceptually a difficult position. Well, I think that the reason we think that that is so and that those things are permissible is because the consequence of that probable cause hearing is simply an interim step in the criminal procedure that will then go on to the criminal trial. And I think that in the context of that proceeding where the defendant is not exposed to the risk that those statements are going to be used for the really consequential things, for guilt and punishment, he hasn't functioned as a witness against himself. Sotomayor, if you don't win at the probable cause hearing, that ends the case. So it has a consequence with respect to his innocence or not his innocence, but his being proven guilty or not, because it ends the case. It can end the case. That's true, Justice Sotomayor, but I think what the self-incrimination clause focuses on is what the defendant's exposure is, and there is no chance that at the end of that hearing the magistrate could enter a judgment of conviction and criminal punishment could ensue. Sotomayor, but it increases the possibility of his being found guilty and punishment imposed. I think that that can't be the test because it would be inconsistent with this Court's decision in Estelle v. Smith. The Court there recognized that there would be no self-incrimination problem with using a defendant's compelled statement to adjudicate his competence in a state trial. Breyer, what about other things? I mean, how does it work? I have not conducted grand juries. Some of my colleagues have. But, I mean, I can imagine all kinds of unconstitutionally seized evidence. It could violate the Fourth Amendment. It could violate the Fifth Amendment's coerced confession. It could violate any one of 15 to 15, not 15, but, you know, five or six different constitutional prohibitions. And if the prosecutor says I'm going to go and introduce all this stuff before the grand jury, does then a defendant have no remedy whatsoever? Well, that's what this Court has held in cases like Lon and Kalon. Then does that happen all the time, that in grand juries they introduce coerced confessions, they introduce a – this comes as a surprise to me. I mean, you have the experience. They introduce illegally seized evidence. They introduce all this constitutionally impermissible evidence. Well, the issue, Justice Breyer, is I think that oftentimes it won't be apparent from the outset that the evidence was obtained in violation of the Constitution. Breyer, I guess this is not relevant to what happens, but I can be educated. And it seems like an important point. I can tell you that at pretrial probable cause hearings, both under the Federal rule, this is rule 5.1, and in the majority of State jurisdictions, defendants are prohibited by rule from challenging the admission of evidence on grounds that it was unlawfully acquired. Now, that doesn't mean that they lack a remedy. They can file a motion to suppress. It can get that issue resolved before they have to face the consequence of either taking a plea or going to trial. But I think what those rules recognize, and there are other distinctions between the body of evidence that's available at the probable cause hearing as well, hearsay is routinely admitted. So I think what those rules recognize is that a probable cause hearing is fundamentally distinct from the issues that are going to be resolved at the guilt stage. It's a lesser consequence for the defendant. He doesn't face the exposure to possibly having his conviction and punishment adjudicated. And for that reason, courts have recognized in this Court, in cases like Gerstein and Brinegar and Barber, have recognized that a defendant doesn't have the same right to have that determination made on the body of evidence that would be admissible at trial. Kagan Suppose we rule against you on this issue, do you think that that would have necessary consequences for any other kinds of proceedings? I think it would depend on the basis on which this Court ruled against us. Now, I understand that Respondent has suggested some ways to narrow what I understand to be the Tenth Circuit's rule in this case, where, as I read the Tenth Circuit's opinion, once you're in the criminal case, all proceedings are covered. And Respondent identifies some limiting constructions that I think would limit the number of procedures to which the rule would apply, looking at things like what is the legal issue being resolved in the case and what is the potential consequence. So in that sense, I think that the Court could write an opinion that narrows down on the probable cause hearing that was at issue here.   Now, you're talking about Gerstein hearings. Do you think that this is identical to Gerstein hearings, so that whatever we did here, we would have to do there, or do you think a distinction can be drawn between the two? In other words, if you – if we rule against you, will the government come back the next time and say, ah, we lose now, or will you have a good argument to make? I am sure we would not lose, or hopefully not. I think the argument we would make would then look at the purpose of the Gerstein hearing and would say the purpose there is to determine whether pretrial detention should continue, and that would be a different purpose than the probable cause determination, which is a bind-over determination. But I think actually that focus on purpose shows why we should prevail in this case, because the purpose of this proceeding is fundamentally different and fundamentally distinct from the kinds of issues that a defendant will face at trial. Ginsburg's is to determine whether there is enough evidence to go to trial. And on the one hand, you are conceding that the evidence couldn't come in at trial, but it can be used to determine whether there is enough evidence to go to trial. That seems strange. Well, I think, again, Justice Ginsburg, this goes back to the lesser consequences of a probable cause hearing. It's not meant to be a full dress rehearsal for trial, and it's not meant to necessarily resolve exactly what evidence is going to be admissible at trial. It's meant to determine whether there is enough evidence to go to trial, evidence that can't come in at trial. And, again, I think that that's not anomalous when you look at how these proceedings generally operate, with the admission of hearsay, for example, with the admission of evidence that might later be determined to have violated the Fourth Amendment. I suppose you don't know at the probable cause hearing whether it's going to be admissible or not, because you may not have the defendant's argument, the defendant's side of the case. I mean, that's the whole point about the grand jury proceedings. Exactly. And I think that that would also be a problem with trying to apply this rule to the Gerstein hearing and to other proceedings where there aren't those same adversarial safeguards or adversarial presentations. I think if this Court were to adopt a rule like the one the Tenth Circuit adopted here, then it really would gum up the works, essentially, by forcing adjudication of those suppression questions at the outset of a case before any issue could be resolved, before the Gerstein determination would be made or bail set. Only if it's raised. Well, Justice Sotomayor, I think that that shows that there are complicated questions about what a defendant would then have to do to preserve an argument. And this Court has earlier, in earlier cases, observed that a lot of times at the outset of a case, the suppression question might be complicated, in fact intensive. A defendant might not realize that he has a valid claim. And so to put the onus on you to do it. There's a lot of jurisdictions who already give defendants those rights to do it right at the beginning of the case. Some exercise it, some don't. But the lot don't, because there's a lot of reasons why a defendant doesn't want to do it early on. Well, there's certainly a lot of variance in how State jurisdictions handle this issue. But I think that the problem of the way that you're anticipating this will create a problem. Well, that's, I think, because as we've read the criminal cases, this issue hasn't largely arisen, and there hasn't been a requirement that courts adjudicate suppression questions in the sequencing of preliminary proceedings before they resolve other issues in the case. If this Court were to instead adopt a broader rule and find that any use in any proceeding in a criminal case could violate the Fifth Amendment, then I expect that it would require substantial changes to the criminal process. Roberts. Thank you, counsel. Ms. Corcoran. Mr. Chief Justice, and may it please the Court. Our test for a violation of the Self-Incrimination Clause is the one this Court has always applied. A compelled, testimonial, incriminating statement cannot be used in a criminal case. That test has four requirements. Each of them comes directly from the Fifth Amendment's text, and Petitioner concedes three of them here, that the statement was compelled, that it was used in a criminal case, and that it was by a witness, which means it was testimonial. That leaves only the requirement that the statement be against himself. This Court has long recognized that a statement is against someone when it can be used to criminally prosecute them, when it is incriminating. Petitioner does not contest that Officer Vogt's statement was incriminating. Instead, it urges the Court to redefine the word against so that the clause no longer applies in any criminal case, but only in the portion of the criminal case where guilt is ultimately adjudicated. There are numerous fatal flaws with this theory. I'll start with the Fifth Amendment's text. Petitioner has no explanation for why the Framers would have chosen this circuitous way to limit the clause's application. If the Framers had intended the clause to apply only in criminal trials, they wouldn't have hidden that limitation in the word against. They would have just said, in any criminal trial, instead of any criminal case. And it's particularly implausible that you can't use it in a criminal case. Kennedy, you seem to assume that in a probable cause hearing, the State has gathered all of its evidence, that it's done all of its investigation, that it has all of its witnesses in order, but that's just not the way probable cause hearings work. No, certainly not. The probable cause is a very low bar. I think in Cayley the Court described it as a reasonable belief that the defendant committed the crime. And so once we get to that probable cause hearing, if the government has enough evidence to meet that bar outside of the defendant's compelled statement, then there's no reason to get into this issue here, that we'll be able to show probable cause. Kennedy, but the point is the government might not have readily available the evidence that it ultimately will use. Yes, but once we're at the point where we have this adversarial courtroom proceeding, which is the last step before moving to trial, if all the government has at that point to prove probable cause is the defendant's compelled statement, then it makes enormous sense to figure out at that stage whether that statement is admissible or not, for the reason Justice Ginsburg pointed out earlier, which is 95 percent of the time, this hearing is the whole ballgame. Once the prosecution gets its probable cause determination, the vast majority of defendants will choose to plead instead of leaving. Roberts, but the plea will be the content of the plea agreement will be affected by whether or not the statements are going to be admissible at trial. It's not as if they don't the prosecutor doesn't have to worry about that in deciding what plea to offer. Yes, but the defendant will be in a position where they won't know about that admissibility determination until they've already rolled the dice and gone to trial. Again, the vast majority of defendants are going to take the more conservative route and take that guilty plea, even though the government, it turns out, didn't have even enough evidence to show probable cause. Roberts, I don't know that that's true. They have to be represented by counsel. The counsel can look at it and say, look, they're never going to be able to use this, so don't plead to that. Maybe they'll offer something else. But the fact that it's going to be resolved in the plea bargain context rather than an actual trial, I just don't see the pertinence of that. Yeah. I mean, the admissibility of a statement, sometimes it's going to be clear here when you're talking about a compelled garrity statement, it's obviously not admissible. But a lot of the time, there are going to be different questions, and it's sure the defense counsel is going to advise the defendant on the likelihood of success at trial. For reasons that are my own problem, I suddenly see now for the first time that if you win here, if you win, this is a major change, because it's pretty hard to see how you can say you can attack the preliminary hearing and you cannot attack the grand jury and you cannot attack the Estelle here or all these different hearings that they've been talking about, so suddenly, whereas you previously haven't done it, for whatever set of historical reasons, this will suddenly be subject to a lot of attacks. So that makes me pretty careful. And for that reason, I looked up whether you objected, because I do not see how the magistrate running the preliminary hearing can know what to do unless somebody tells him that these statements were taken in violation of the Fifth Amendment. One, I don't see where you ever did tell the magistrate that. Two, looking at the transcript of the preliminary hearing, I couldn't find any instance where any of the compelled statements were introduced into the preliminary hearing. So what I would like you to do is to tell me what pages to look at in the preliminary transcript, which I have here, which will show that you did object, or at least that some of the compelled statements were used. So none of this is in the record, and the reason it's not. It may not be in the record, but if it's not in the record. But that's an important point, isn't it? Yes. Of course it's an important point. But the ---- Well, before we start having an extended exchange about material and something that's not in the record, well, I guess I would just like to point out that it's not in the record. There's a reason we confine things to what's in the record, including how do we know what this is if it's not in the record? How do we know that it's been adequately had a chance for people to object to it and all that? It's not just a passing comment that it's not in the record. Nor is actually mine a passing comment, because Article III of the Constitution says we are to take real cases and controversies and to decide a major matter where, in fact, going from what is in the record to an earlier stage of this and discovering, if it's true, that there was no instance about which you are complaining, in my mind, raises the question as to whether this is, in fact, an appropriate case or controversy for the Court to take. And we're supposed to decide whether the cases are controversies according to law. And as far as I'm concerned, coming in and saying, I want to know about this thing that's not in the record, is no difference from somebody else coming off the street and saying, hey, wait a minute, I know what happened in this case. So go ahead and answer it. It's a question that you've been presented with. Go ahead and answer it. I want you to answer it. I'm just saying, I will discount the answers because it's not something that's in the record. So it's really important to explain that the reason it's not in the record is because Petitioner chose to seek this Court's interlocutory review at the pleading stage. And so that is why Petitioner has not raised any of those questions before this Court. It is conceded at this point that the complaint adequately alleges that the statement was used in the probable cause hearing. Petitioner is not contesting that. And so none of these questions are ripe for resolution at this point because of Petitioner's search strategy.  But let me ask you this, what did the city violate the Fifth Amendment at the time when the officer was questioned? No. The violation was not complete until the statement was used in the criminal case. Then why are you suing the city?  of a constitutional right. I want to point out Petitioner has not challenged in this Court whether we have adequately alleged proximate causation. In answer, yes. I understand that. I'm just trying to understand. This seems like a very odd case. I'm just trying to understand what's really involved. That's one thing that I don't understand. How did they cause the – what will your theory be as to how they caused this prosecution? So the Tenth Circuit applied settled law with regard to proximate causation. All of the court of appeals have held that cause in section 1983 incorporates common law principles of proximate causation. So what the Tenth Circuit said is that when the police chief went to the Kansas Bureau of Investigation and said, here are Officer Vought's compelled statements, you should initiate a criminal investigation, it was reasonably foreseeable that those statements would ultimately be introduced in the criminal case. And I'll say that the Ninth Circuit and the Seventh Circuit, or I guess the Sixth Circuit, have addressed very similar circumstances and come to the same conclusion. So I'm not aware of any circuit split on this issue, but it's certainly not before this Court. That's a section 1983 question. Petitioner has chosen to present to this Court the Fifth Amendment question. It's a constitutional question. Everything that's going on below will be decided on remand. Sotomayor, just so we're clear, I think the concurring opinion in this case did a very good job of pointing out that all of the questions that are being asked, both by Justice Alito and by Justice Breyer, there is a substantial question about whether any of these statements were compelled. There's a substantial question about whether there was an objection or not. There are lots of questions that the concurrence said still had to be decided. Correct? And so if this Court wanted to dig the case as improvidently granted, we would certainly not object. I think we said in our brief in opposition that we thought it was premature to take this question at this time. But I can continue to talk about the record. Okay? So going back to the question that Petitioner presented to this Court. Could I just go back? There is a circuit split on this. There's three circuits on one side, three circuits on the other, four now, on the other side. Among those four are now the tenth, the ninth, the seventh, and the second who support your position. Do you know whether the works have been gumped up in those circuits? There's no evidence they've been gumped up. And I also want to say about the asserted circuit split, the cases that are supposedly in support of the Petitioner's position, none of them actually addressed a circumstance where you had a post-charge pretrial use of the compelled statement. They were all cases similar to Chavez, where the defendant or I guess the plaintiff was attempting to rely on pre-charge compulsion to make a Fifth Amendment claim. And now in doing so, well, I should clarify that in at least one of those cases, the compelled statement was also used to initiate the charges. Alito, unless you can distinguish this from the grand jury, it's the issue has enormous implications for the reasons that were brought out by Justice Breyer's questions. So how could you distinguish this from the grand jury? So I'm going to attempt to answer that concisely with the caveat that it would take an entire second set of briefs to adequately address the nuances of the Court's grand jury jurisprudence, which is why neither we nor the government attempted that. This is just a very different and more complicated question. But my best simple answer is that Hubbell and Councilman hold that the clause applies to grand juries. With this added limitation from Lawn, Calandra, and Williams, the courts don't have authority to crack open indictments because of the grand jury's status as an independent constitutional fixture. It's not textually assigned to the judicial branch. That said, courts do crack open indictments all the time. That's the whole point of a Castigar hearing. And when a court finds that a grand jury has made use or derivative use of a compelled immunized statement, the remedy is to dismiss the indictment itself unlawful. That is irreconcilable with Petitioner's theory that it's perfectly fine for the government to use compelled statements all the way up to the point of trial. So as a practical matter, I was going to say that the Grand Jury Business, mostly because I think that there is this very long tradition of not cracking them open unless we have to. And, you know, it might be that there's the same right in the grand jury context, but we've just decided in a wide variety of ways that that right does not get remedied in the same way, as easily, as quickly as anything as in other contexts. Wouldn't that be correct? Yes, that's fine. And that's as far as we went in our briefing, because, again, this is such a complicated question. But, yes, the long Callender-Williams limitation on cracking open indictments would not apply to probable cause hearings, both because the unique historical posture isn't there, but also because the nature of the proceeding is so different. A probable cause hearing is an adversarial courtroom proceeding before a judge, so there isn't anything to crack open. So that leads to Petitioner's policy point about whether it makes sense to apply the clause to probable cause hearings in a way that's different than how the clause applies to grand juries. And this Court answered that question in Coleman v. Alabama, when it said that the Sixth Amendment right to counsel applies to probable cause hearings, the exact sort of probable cause hearing we have at issue here, even though that right does not apply to grand juries. And Justice White's concurrence made the same ominous predictions about the death of probable cause hearings that Petitioner has made here, and it didn't happen. And it's 48 years later, and the vast majority of States are still using probable cause hearings as the primary mechanism for pursuing felony prosecutions, even though the right to counsel is surely more burdensome on the State than the self-incrimination privilege. So I'd like to go back to the Court's precedent, because I think this is important. Not once in the history of this country has this Court relied on the term witness-against-itself, himself, to limit when the use of a compelled incriminating testimonial statement violates the clause. But what is your test for determining whether a proceeding is part of the criminal case for these purposes? So I would look to the Court's definition of criminal prosecution in Rothkerry, because we know that a criminal case is at least as broad as a criminal prosecution. In Rothkerry, it says it's the defendant's first appearance before a judicial officer where he is formally told of the charges against him and deprivations are imposed on his liberty. And there is no question that that covers the probable cause hearing here. Sotomayor, here. Sotomayor, Mr. Chief Justice. So Estelle was a case about competency. What the Court held in Estelle was that the defendant's rights had been violated by the use of his psychiatric exam at his sentencing proceeding. So that holding in itself forecloses the notion that the clause is only a trial right. What Petitioner and the government are latching onto are two sentences of dicta where the Court said, well, if the psychiatric exam had been limited to its function of determining whether the defendant understood the charges against him and was capable of assisting in his own defense, then a Fifth Amendment problem wouldn't have arose. That is consistent with our position, and I'll explain why. A competency hearing is part of a criminal case, I imagine, most of the time. But the other three requirements of the clause are going to substantially limit its application to those hearings. So Estelle explains that a routine competency exam is focused exclusively on whether the defendant understands the charges against him and is capable of assisting in his own defense. That determination does not require extracting testimonial incriminating statements from the defendant. And to the extent that the defendant has volunteered to put competency at issue, it might not even be compelled. So do you think that's fair? Alito, but your answer is, though, but in general, then, the clause does not apply or does apply in a competency hearing. So the clause is the evidence obtained in violation of the privilege would be admissible in a competency hearing or not? Yes. So in the narrow circumstance where a defendant has been forced to undergo a psychiatric exam and in answering those questions he makes a compelled incriminating testimonial statement, no, that can't be admitted in the competency hearing because it's part of the criminal case. But that limitation shouldn't affect the utility of competency hearings. I think it's important to point out Estelle didn't even involve a competency hearing. There the psychiatrist had sent a letter to the judge that simply said, I find that the defendant understands the difference between right and wrong and understands the charges against him and is capable of assisting in his defense. So what about a Gerstein hearing and a bail hearing? Yes. So a Gerstein hearing is not part of the criminal case because it's a Fourth Amendment requirement. It's a substitute for an arrest warrant. So this Court fleshed that point out well last term in Manuel v. City of Joliet. And so Gerstein itself explains that because it's a Fourth Amendment requirement, the whole panoply of rights in the Sixth Amendment do not apply to Gerstein hearings. Alito, I thought she said that the criminal case begins when the defendant is, appears in court and is called upon to answer the charges? Yes. So I don't know that a Gerstein hearing. That's not a Gerstein hearing? Doesn't satisfy that? No. The point of a – well, it depends on whether, when you would have the Gerstein hearing. But the Gerstein hearing that's contemplated by Gerstein is this hearing within 48 hours of arrest where the purpose is to get the arrest warrant after the fact. So there's no reason that the Fifth Amendment requirements would apply to that hearing when the Sixth Amendment requirements don't. It's to the extent that it's happening at the same time as the criminal case, it's happening in parallel. Well, wouldn't it, in a federal case, if there's a complaint, wouldn't it begin at the time of the filing of the complaint? Wouldn't that be the beginning of the criminal case? Yeah. So a Gerstein hearing – the Gerstein determination could be folded in to something that's happening within the criminal case. So I understand that to happen sometimes. The State will quickly file charges and then fold the Gerstein hearing into the arraignment. But there's nothing requiring States to do that. So in an emergency situation where a State, you know, they need to take physical custody of someone who has confessed to murdering their whole family, this – the that Gerstein determination based on the confession and then later pulling together the evidence necessary to make the probable cause showing in criminal case. I'm just not following your answer. Yeah. In a Federal case, when a complaint is filed, is that not the beginning of the criminal case in your view, so that everything that happens after that is part of the criminal case? Yes, that's right. First appearance – initial appearance in court, that's part of the criminal case. The bail hearing is part of the criminal case. The – if there's a competency hearing, that's part of the criminal case. It's all part of the criminal case. Yes. And bail determinations are made at different sorts of proceedings. So – but a Gerstein hearing, what Gerstein is contemplating is this substitute for a warrant. So instead of the – it's when the police want to take custody of someone before they've gotten the arrest warrant, they can do so and then go to a neutral adjudicator and say, do I have sufficient evidence to justify the arrest? That is a Fourth Amendment requirement. Kagan, if I understand what you're saying, and maybe I don't, but it's – it's a substitute for exactly the proceeding that would take place if the police decided that they needed an arrest warrant, is that right? Yes, exactly. And in that proceeding, you would say that the privilege does not apply. Yes, the privilege – Because the criminal case had not yet commenced before the arrest has been made, is that correct? Right. And that's the reasoning of Gerstein, when Gerstein says why the Sixth Amendment rights would not apply to that hearing. You know, Justice Alito's, I think, hypothetical, the Gerstein hearing would be happening within the criminal prosecution, but Gerstein says those rights don't apply in that context. Is it possible to ask – this is a 1983 case. Yes. Could we say, in your opinion, before a plaintiff in a 1983 case can bring a claim that the preliminary hearing considered matters that were taken in violation of the Fifth Amendment, they must allege in their complaint that they objected before the hearing, for otherwise the magistrate would have no idea what he is supposed to do? So Petitioner has not asked this Court to interpret Section 183. I know. They haven't. I'm asking. Yes. So I think that's a question of statutory interpretation and congressional intent. If Congress wanted to limit Section 1983 that way, it could, but there's no indication in the plain language of Section 1983 that it is limited in that way. Breyer. Then what is the answer to this? There are many, many ways in which a statement by an individual could violate the incrimination. In this case, he is asked questions by his superiors in the police department under threat of leaving. Yes. And they don't know that he considers that to be a violation of the Fifth Amendment. Well, the Court Then those statements go to court in a preliminary hearing, and the magistrate doesn't know that the person considers them to be a violation of the Fifth Amendment. What are the magistrates and the police department supposed to do? They are not necessarily conversant with all the facts of the case. If no one objects. Yes. So I want to start by saying that this Court held in Minnesota v. Murphy that a Garrity privilege is self-executing, that when an employee is in a situation where their boss says to them, you will lose your job if you don't make these statements, it self-executes. So you don't have to raise the privilege at that moment. But in response to or in response to what the State is supposed to do, what happened here is highly unusual. Since the 1970s, the Department of Justice and police departments across the country have developed best practices to ensure that compelled statements are not used in criminal investigations. So once a statement is compelled via an administrative investigation or a grant of immunity, that statement is then formally siloed from any criminal investigation. So what happened here, the police chief's decision to take this compelled statement and hand it to the Kansas Bureau of Investigation and say you should investigate this, was highly unusual and, frankly, very hard to understand given the ubiquity of Garrity protocols in this country. So to go back to your point earlier about whether this is a dramatic revolution, it's not. What we're proposing here is what the law has always been. All police departments across the country and the Department of Justice would say, even before this case coming before the Court, that what the police chief did here was illegal. Roberts I don't understand when you talk about being siloed and not being so the idea is you're supposed to pretend that the person didn't say what he said in conducting the investigation? Saharsky Yes. So the best practices is that whoever was involved in taking that compelled statement is then siloed themselves from the criminal investigation so that the government can prove that the criminal investigation and the ultimate prosecution happened entirely independent of the person. Roberts But if the person says, you know, they say you've got to tell me what happened or you'll be fired, and the person says, you know, I buried the body here, he's not supposed to tell anybody? Saharsky Well, if he was asking that question as part of an administrative investigation, then yes, you can't use that statement. Now, there could be an independent criminal investigation. Roberts I just want to make sure I understand. So he's investigating it and said do you have anything to do with this disappearance and the person says I buried the body next to this barn, the person at that point is supposed to say, okay, I'm going to turn this over to Fred and I'm not going to tell him anything. Saharsky So you're talking about a government employer making that inquiry of an employee as part of an administrative investigation or as the government? So under those circumstances, once the government gives the grant of immunity, no, that cannot be used. That's been the law since Castigar and Garity. Roberts No grant of immunity, you've got to tell us or I'm going to fire you. In other words, the same thing here, that it's a compelled statement. Saharsky Yes. So then it's a compelled statement and the privilege is self-executing. Roberts For the purposes of an ongoing investigation. Saharsky Yes. And if that were not the rule, so if Petitioner's theory was correct, then the disincentives for employee cooperation in those sorts of administrative investigations would skyrocket, because if the grant of immunity only applies at trial, you could compel those statements from the employee at pain of losing their job and then turn around and use those statements to criminally prosecute them, keep them in custody, all the way up to the point of the criminal trial. Kennedy So if the employer requires a statement to be made and the employee says that a crime was committed, the employer cannot tell the police department? Saharsky Yes, that's been the rule since Garity and Castigar. Now, I do want to distinguish between unwarned statements and compelled statements. So an unwarned statement where the Miranda rights are not read is not necessarily a constitutional violation. That is a prophylactic exclusionary rule that the Court may or may not extend to preliminary hearings. But when it comes to a compelled statement, whether immunized or not, the Constitution is very clear. It cannot be used in a criminal case. And that was what the framers intended as well. We know that the framers based the clause on a common law privilege that specifically applied to preliminary proceedings. Sotomayor This is such an odd case, because I'm not quite sure that there was a compelled statement at all. If the facts, as I read them, and I know they're not in the record and I know what the Chief says, but first of all, no employer, his employer didn't compel these statements. He went to his employer because he wanted a different job. Saharsky That was true for the first statement. Sotomayor All right. Sotomayor On the second statement, he went to his Chief and said, I'm resigning. Saharsky Sorry. So that's not actually correct. So he voluntarily made the first statement to the police chief. The police chief then told him he needed to document what had happened on pain of losing his job. That is the compelled statement. Then after he made that statement, he tendered his resignation, and then there was a third statement in which he gave more details about what had happened. So it's the question of the impact of the resignation on that third statement is not correct. Sotomayor But that's what's going to be litigated below. I thought he had announced his resignation before there was a request for additional statements. Saharsky So in the complaint, that resignation happened between the second and the third statement. Sotomayor I'll take it, but it's still an odd case. Saharsky It is. And again, it's an odd case because Petitioner chose to seek this Court's review at the pleading stage. And Petitioner chose to present only the Fifth Amendment question to this Court. Alito If this case goes to trial, you will prove that the officer suffered damage as a result of the probable cause hearing or as a result of having been as a result of the admission that he made under allegedly under compulsion by the city? Saharsky So it would be the use of the statement in the probable cause hearing. The complaint alleges emotional damages, reputational damage, loss of income, seeks punitive damages. Petitioner has not contested the adequacy of those allegations. Alito But you will prove that the reason why he didn't get the job with the other police department was the probable cause hearing and not the statement that he made? Saharsky No, that would be inconsistent with the complaint. The complaint says that the city of Hayesville withdrew the job offer at the point of the criminal investigation by the Kansas Bureau. Sotomayor But that has nothing to do with the probable cause hearing. He won at the probable cause hearing, so how could the statement have hurt him? How can he prove damage? Saharsky Yeah, I would just say on this record, Petitioner has not challenged the adequacy of those allegations. At a minimum, he would be entitled to nominal damages. So I want to just emphasize that what we're talking about here is an incriminating testimonial statement that the government has extracted from the defendant against his will. There is nothing radical about saying that the government should not be able to use that statement for any purpose in a criminal case. That is the framers' position. They found it offensive to a civilized system of justice to allow prosecutors to enlist defendants as instruments in their own condemnation. They thought it was crucial to our democracy that prosecutions proceed based on the Petitioner's theory, to the contrary, should be rejected. I'm happy to answer any other questions. Roberts Thank you, counsel. Four minutes, Mr. Huytens. Huytens I'd just like to make three quick points in rebuttal. One, in response to Justice Kagan's point about the apparent oddity with regard to this particular proceeding, one about suppression hearings, and one about Garrity. So in response to Justice Kagan's questions about the oddity of this particular type of hearing, I think beyond the fact that the Supreme Court of Kansas has held that the purpose of this hearing is not to adjudicate guilt or punishment, I think an even more important indication of that is that under Kansas law, nothing that happened at this hearing could conclusively resolve officer votes, guilt, or innocence one way or the other. And the way — the reason that we know that is because the Supreme Court has specifically held that the dismissal of charges after a probable cause hearing is not preclusive of, and without prejudice to, the State's ability to reinitiate the exact same criminal prosecution, which is the same rule for grand juries, right? The Court has said that just because a grand jury refuses to return an indictment does not mean that the prosecution cannot ask another grand jury to return an indictment. And in fact, the Supreme Court of Kansas has reversed trial courts who have dismissed at a probable cause hearing on the theory that the government will not be able to carry its proof beyond a reasonable doubt burden at trial, because they've said that's not the purpose of this hearing. This hearing does not adjudicate guilt or innocence. The point on suppression hearings, I think it's just worth emphasizing again in response to Justice Ginsburg's point. We are not talking about the possibility that someone will have to decide to plead guilty without being able to challenge evidence for one very simple reason, they can file a pretrial motion to suppress. Many — it is true that a large majority of prosecutions are resolved via guilty plea, but it is also true that before pleading guilty, defendants often file pretrial motions to suppress and only plead guilty after the denial of their motion to suppress. In the Federal system, they are even sometimes permitted to file a conditional guilty plea to preserve their ability to challenge the admissibility of the evidence on appeal. So we're not talking about taking people — away people's ability to challenge. And then last but not least, we didn't discuss it in the initial argument, but this — the second argument that we have raised, the second independent argument relates that this Court could say whatever the rule might be with regard to other types of Fifth Amendment claims, there can be no garrity violation until trial. It would actually be very similar to what I understand a supermajority of this Court said in Chavez with regard to Miranda claims. I understand that in Chavez, the Court was deeply divided about whether there were circumstances in which an involuntariness claim could occur before trial. But as I understood, even some of the dissenting justices in Chavez said a Miranda claim is something that can only accrue until trial, and I think that would make sense when it comes to garrity claims. Garrity does not forbid the taking of the statements. There can be no garrity violation when the statement is taken. The violation under garrity is the later use of the statement. And so we would suggest that if the Court doesn't want to reach the broader issue, they could simply say that this type of Fifth Amendment violation cannot occur until the statements are used at trial. We ask the Court be – we ask that the judgment below be reversed. Thank you, counsel. The case is submitted.